IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETTY SILER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1201 |
| | § | |
| HAJOCA CORPORATION et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] is Defendants' Motion for Summary
Judgment (Doc. 36) and Plaintiff's Motion to Strike (Doc. 63).  The
court has considered the motions, the responses filed thereto, all
other relevant filings, and the applicable law.  For the reasons
set forth below, the court **RECOMMENDS** that Defendants' motion be
**GRANTED**.  Plaintiff's motion is **GRANTED IN PART, DENIED IN PART**.

## I.  Case Background

Plaintiff Betty Siler ("Plaintiff") filed this action against
Hajoca Corporation ("Hajoca"), LCR-M General LLC,[2] LCR-M Limited
Partnership ("LCR-M"), and Moore Supply Company ("Moore Supply")
(collectively "Defendants"), alleging discrimination in violation
of the Age Discrimination in Employment Act ("ADEA").[3]

---

[1]     This case was referred to the undersigned magistrate judge pursuant
to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the
Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 67.

[2]     LCR-M General LLC was the managing partner of LCR-M. See Doc. 14,
Defs.' Ans. to Pl.'s 1st Am. Compl. ¶ 3.

[3]     29 U.S.C. § 621 et seq.

A.  **Factual History**

LCR-M is engaged in the business of distributing plumbing supplies and fixtures to customers in Texas, Louisiana, Mississippi, and Arkansas; its related company, Hajoca, is engaged in the same business on a nationwide level.[4] Among LCR-M's distributors was Moore Supply, in Texas, the stores of which were divided by region.[5] Each region included a regional manager and each store had a manager.[6] The Moore Supply store located in Conroe, Texas, was in the South Texas region. During the events that gave rise to this lawsuit, Mark Hanley ("Hanley") was the South Texas region manager and Colin Boyd ("Boyd") was the manager of the Conroe store.[7]

On August 1, 2001, Plaintiff began her employment as a receptionist with Moore Supply in Conroe at the age of fifty-two.[8] Plaintiff was also trained to work in the store's showroom.[9] She worked as a receptionist and helped out with sales in the showroom

---

[4]  See Doc. 36-4, Ex. F to Defs.' Mot. for Summ. J., Decl. of Lee Cormier ¶ 2.

[5]  See Doc. 36-4, Ex. E to Defs.' Mot. for Summ. J., Decl. of Colin Boyd ¶ 3. Moore Supply was formerly a Texas corporation until it was acquired by LCR-M. See Doc. 14, Defs.' Ans. to Pl.'s 1st Am. Compl. ¶ 5.

[6]  See Doc. 36-4, Ex. E to Defs.' Mot. for Summ. J., Decl. of Colin Boyd ¶ 3.

[7]  See id. ¶¶ 2-3.

[8]  See Doc. 36-2, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 18, 32. In the interests of clarity and efficiency, the court will refer to the Moore Supply store located in Conroe, Texas, simply as "Moore Supply" throughout this opinion.

[9]  See id. p. 32.

for approximately three years before transitioning to a full-time position in the showroom, at which point Moore Supply hired a new receptionist/administrative assistant.[10]  In 2007, at Plaintiff's request, Defendants moved Plaintiff from her position in showroom sales to the position of administrative assistant.[11]  As the administrative assistant, Plaintiff's job duties included completing the daily cash reconciliation and deposits, answering the phones, taking account payments, billing, keeping payroll records, filing, maintaining all files, editing product orders, ordering office supplies, and resolving repair issues.[12]  Plaintiff would occasionally assist with sales when the sales employees were unavailable to help customers.[13]

In September 2007, Hanley, the regional manager for South Texas, hired Boyd as the manager of Moore Supply.[14]  At the time Boyd became the manager of Moore Supply, he was approximately twenty-seven years old.[15]  Moore Supply employed nine individuals at this time: Plaintiff, who was the sole administrative assistant,

---

[10]    See id. p. 35; Doc. 49, Ex. 8 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 46-48.

[11]    See Doc. 36-2, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. p. 43.

[12]    See id. pp. 49-50.

[13]    See id. p. 50.

[14]    See Doc. 36-4, Ex. E to Defs.' Mot. for Summ. J., Decl. of Colin Boyd ¶ 2.

[15]    See Doc. 36-4, Ex. F to Defs.' Mot. for Summ. J., Decl. of Lee Cormier ¶ 3(b).

four salesmen, three warehouse employees, and one showroom employee.[16]  Shortly after becoming manager, Boyd hired Toby Taft ("Taft"), with whom Boyd had worked at a Moore Supply store in League City, to fill the newly created position of operations manager.[17]  In early 2008, Boyd hired forty-seven-year-old Jeff Brewer ("Brewer"), who was the manager of a Moore Supply store in Tyler, for an outside sales position that did not exist prior to Boyd's becoming manager.[18]  Boyd also hired two employees to drive and work in the warehouse and an employee to work in the showroom in 2008.[19]

Throughout 2008 and 2009, Boyd regularly met and communicated with Hanley in regard to the profitability and performance of Moore Supply.[20]  Beginning in the fourth quarter of 2008, stores in Hanley's region experienced an overall loss of revenue as a result

---

[16]     See Doc. 50, Ex. 9 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's Dep. pp. 10-12; Doc. 45-3, Ex. 2 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Decl. of John Stewart ¶ 3.  The court notes that three of the salesmen and one of the warehouse employees were over the ADEA-protected age of forty in 2007.

[17]     See Doc. 50, Ex. 9 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's Dep. pp. 8-9, 13-14.

[18]     See id. pp. 16-18.  At his deposition, Boyd testified that there had previously been a position in outside sales at Moore Supply, but the position no longer existed when Boyd became manager.  See id. pp. 17-18.

[19]     See id. pp. 14-16, 18.  The employee hired for the showroom in 2008 replaced an employee who was fired for poor performance based on customer feedback.  See id. p. 16.

[20]     See Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Mark Hanley's Dep. pp. 17-19.

4

of an economic recession.[21]  In December 2008, Hanley sent an email to Boyd wherein Hanley noted that the net salary ratio for Moore Supply had increased over the past four months.[22]  To reduce employee compensation costs, Hanley recommended that Boyd limit overtime and terminate the store's temporary driver and hire a new employee at no more than $9.00 per hour.[23]  Hanley further remarked that "some of your folks may not be worth what you're paying them. John Stewart ($47,400) and Betty ($14.00/hour) come to mind."[24]

Boyd's anticipated plans to improve productivity included, inter alia, increasing Plaintiff's duties and responsibilities in order to provide Taft with more time to engage in management duties, effective by January 15, 2009.[25]  Boyd did not discuss any plan for improvement with Plaintiff.[26]  In Plaintiff's view, Boyd generally ignored her while he was manager of Moore's Supply, and would discuss business and socialize with only five or six of the other employees, all of whom were younger than Plaintiff.[27]

---

[21]     See id. p. 21.

[22]     See Doc. 55-3, Ex. 65 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Email Dated Dec. 22, 2008.

[23]     See id.

[24]     Id.

[25]     See Doc. 65-1, Ex. 83 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's 2008-2009 Profit Center Manager Profile.

[26]     See Doc. 45-4, Ex. 4 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Pl.'s Decl. ¶ 7.

[27]     See Doc. 49, Ex. 8 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 52-57.  Plaintiff testified that this conduct made her feel uncomfortable and that she believed Boyd behaved in this way because of

5

In February 2009, Hanley and other members of the South Texas
management team began taking steps to address the region's lost
revenues, starting with "just understanding what we were dealing
with and getting the entire management team to buy into that."[28]
Also in February 2009, Boyd rehired a former employee as a
warehouse manager.[29]  The next month, Hanley met with Boyd to
discuss Hanley's concerns about the recession; Hanley followed up
with an email summarizing their discussion.[30]  Primarily focusing
on limiting employee compensation costs, as well as increasing
margins and sales, Hanley stated that Boyd could "make some longer
term gains by loading [Plaintiff] up with a lot more work."[31]

A meeting agenda written by Hanley for Boyd on or about July
28, 2009, reviewed Moore Supply's 2009 net salary, sales, and
margins projections.[32]  The agenda further raised an issue about the

---

Plaintiff's age.  See id. pp. 58-59.

[28]    Doc. 50-1, Ex. 11 to Pl's. Resp. in Opp'n to Defs.' Mot. for Summ.
J., Mark Hanley's Dep. p. 26.

[29]    See Doc. 50, Ex. 9 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ.
J., Colin Boyd's Dep. pp. 18-19; Doc. 58, Ex. 107 to Pl.'s Resp. in Opp'n to
Defs.' Mot. for Summ. J., Personnel Action Form & Employment Appl. of Brian
Bogan.

[30]    See Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n to Defs.' Mot. for
Summ. J., Mark Hanley's Dep. p. 27; Doc. 55-4, Ex. 66 to Pl.'s Resp. in Opp'n to
Defs.' Mot. for Summ. J., Email Dated Mar. 28, 2009.

[31]    Doc. 55-4, Ex. 66 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ.
J., Email Dated Mar. 28, 2009; see also Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n
to Defs.' Mot. for Summ. J., Mark Hanley's Dep. p. 29.

[32]    See Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n to Defs.' Mot. for
Summ. J., Mark Hanley's Dep. p. 48; Doc. 55-5, Ex. 67 to Pl.'s Resp. in Opp'n to
Defs.' Mot. for Summ. J., July 2009 Handwritten Agenda.

"dream team," a term used by management to refer to "superstar" employees in each position who were the best at achieving Moore Supply's corporate goals, and who would be, among other things, "very adept at knowing how the computer system worked and being able to navigate around the computer system."[33]  Specifically with regard to the "dream team," Hanley noted that "C players = C performers" and instructed Boyd that such performers "can either be turned into B or A players or get rid of them."[34]  In regard to Plaintiff, Hanley asked whether she was "doing the same" as three administrative assistants at other locations,[35] all of whom were younger than Plaintiff.[36]

Around the same time, Boyd rated each of his employees with a grade of A, B, C, D, or F, with A being the best, based on their performances as compared to Boyd's expectations.[37]  Four employees received an A or higher, five employees, including Plaintiff, received a B- or higher, two employees received a C or higher, and

---

[33]     Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Mark Hanley's Dep. pp. 50-51; see also id. pp. 49-50; Doc. 55-5, Ex. 67 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., July 2009 Handwritten Agenda; Doc. 50, Ex. 9 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's Dep. p. 98.

[34]     Doc. 55-5, Ex. 67 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., July 2009 Handwritten Agenda.

[35]     Id.; see also Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Mark Hanley's Dep. pp. 51-52.

[36]     See Doc. 61, Ex. 121 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., List of Admin. Employees from 2012.

[37]     See Doc. 55-6, Ex. 68 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Employee Ratings.

one employee received a D-.[38]

In an email from Hanley to Boyd dated July 30, 2009, Hanley suggested that, in order to drive Moore Supply's net salary ratio down, Boyd could either replace two of his employees, John Stewart ("Stewart") and Dan Love ("Love"), with one employee, or "get them to perform at much higher levels."[39]  Stewart and Love received grades of D- and C+, respectively, in Boyd's aforementioned employee ratings.[40]  On August 19, 2009, Boyd completed performance reviews for Stewart and Love.[41]  Boyd stated that Stewart needed to improve his customer service performance, citing customer complaints, and provided him with goals to be achieved within thirty days.[42]  With respect to Love, Boyd stated that Love needed to take immediate steps to improve his pace of work and the number of orders he took.[43]  Approximately three weeks later, on September 15, 2009, Boyd terminated Love, who was fifty-four years old.[44]

_____

[38]   See id.

[39]   Doc. 55-7, Ex. 69 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Email Dated July 30, 2009.

[40]   See Doc. 55-6, Ex. 68 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Employee Ratings.

[41]   See Doc. 51, Ex. 18 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Performance Review for John Stewart; Doc. 53-1, Ex. 41 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Performance Review for Dan Love.

[42]   See Doc. 51, Ex. 18 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Performance Review for John Stewart.

[43]   See Doc. 53-1, Ex. 41 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Performance Review for Dan Love.

[44]   See Doc. 46-4, Ex. 7 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Dep. of Dan Love pp. 8, 16.

Even though Boyd was not impressed with Love's computer skills, he mentioned another opportunity with the company on a database project.[45]

On December 17, 2009, Hanley noted that, over the previous two months, the performance and productivity of Moore Supply had continued to fall.[46] Therefore, the note indicated, Boyd might have to consider additional layoffs, among other possible courses of action.[47] In a 2009-2010 Profit Center Manager Profile, Boyd listed the top priorities from 2009, outlined the 2009 results, set goals for 2010, and identified steps planned for each.[48] Regarding a 2009 priority related to better leadership, Boyd reported that he had reviewed the employees and "made changes with the ones that didn't improve ([Stewart and Plaintiff] were let go)."[49]  In the 2010 portion of the report, Boyd stated that Plaintiff would be replaced, no later than January 2, 2010, with a part-time employee at a net savings of $20,000 per year.[50]

---

[45]    See Doc. 50, Ex. 9 to Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J., Dep. of Colin Boyd pp. 119-20.

[46]    See Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Mark Hanley's Dep. pp. 59-60; Doc. 56-2, Ex. 72 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Notes Dated Dec. 17, 2009.

[47]    See Doc. 50-1, Ex. 11 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Mark Hanley's Dep. p. 60; Doc. 56-2, Ex. 72 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Notes Dated Dec. 17, 2009.

[48]    See Doc. 65-2, Ex. 84 to Pl.'s , Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's 2009-2010 Profit Center Manager Profile.

[49]    Id. p. 3.

[50]    Id. p. 4.

On January 20, 2010, Plaintiff went to Boyd's office, where Taft was also present, to ask a question; while she was there, she was informed about her termination.[51]  Upon Plaintiff's asking for a reason, they said "[s]omething about they couldn't afford [her]."[52]  Boyd also remarked that Plaintiff did not do anything wrong to merit the termination.[53]  Stewart was also terminated in January 2010.[54]

Following Plaintiff's termination, the remaining employees at Moore Supply absorbed Plaintiff's duties and responsibilities.[55] Boyd also obtained help in the warehouse from Taft's wife, Lydia Taft, through a temporary staffing agency.[56]  At times, Lydia Taft would also answer the telephone and take messages.[57]  In 2011, over a year after Plaintiff's termination, Boyd hired Martha Hafercamp ("Hafercamp") on a temporary basis to perform some of Plaintiff's

---

[51]   See Doc. 49-1, Ex. 8 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 92-93.

[52]   Id. p. 92.

[53]   See id. p. 93.

[54]   See Doc. 45-3, Ex. 2 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Decl. of John Stewart ¶ 10.

[55]   See Doc. 50, Ex. 9 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's Dep. pp. 72, 74, 76.

[56]   See id. pp. 72-73; Doc. 36-4, Ex. E to Defs.' Mot. for Summ. J., Decl. of Colin Boyd ¶ 7.  Plaintiff testified that she heard from Stewart, who was terminated one day after Plaintiff, that Lydia Taft had been hired to replace Plaintiff.  See Doc. 49, Ex. 8 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 58-59.  Stewart allegedly learned about this replacement from another employee.  See id. p. 59.

[57]   See Doc. 50, Ex. 9 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's Dep. pp. 74, 76.

clerical duties when Moore Supply fell behind on the duties.[58]
Hafercamp was approximately seventy-five years old when Boyd hired
her.[59]

## B.  Procedural History

Plaintiff filed a charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC") on or about February 12,
2010, following her termination from Moore Supply.[60]  The EEOC
issued Plaintiff a right-to-sue letter, at Plaintiff's request, on
December 29, 2010.[61]  Plaintiff filed this action against Defendants
on April 4, 2011.[62]  On July 17, 2011, Plaintiff filed an amended
complaint, which Defendants answered on August 9, 2011.[63]

The action was transferred to the docket of a different court
for consolidated discovery and other pretrial proceedings on August
26, 2011.[64]  The resolution of dispositive motions and the
administration of trial, however, were not transferred from this

---

[58]    See Doc. 36-4, Ex. E to Defs.' Mot. for Summ. J., Decl. of Colin Boyd
¶ 7.

[59]    See id.; Doc. 36-4, Ex. F to Defs.' Mot. for Summ. J., Decl. of Lee
Cormier ¶ 3.

[60]    See Doc. 6, Pl.'s 1st Am. Compl. ¶ 8.  In her complaint, Plaintiff
stated that she filed her EEOC charge on February 12, 2011.  See id.  Given the
motions and factual accounts offered by both parties, as well as the court's
docket history for this action, the court finds this date to be a typographical
error and properly references the date as February 12, 2010.

[61]    See Doc. 6-1, Ex. A to Pl.'s 1st Am. Compl., Right-to-Sue Letter.

[62]    See Doc. 1, Pl.'s Orig. Compl.

[63]    See Doc. 6, Pl.'s 1st Am. Compl.; Doc. 14, Defs.' Ans. to Pl.'s 1st
Am. Compl.

[64]    See Doc. 15, Or. Dated Aug. 26, 2011.

court or consolidated with other cases.[65]

Over a year later, on November 2, 2012, Defendants filed the pending motion for summary judgment, to which Plaintiff responded on December 28, 2012.[66]  The same day, Plaintiff filed the pending motion to strike portions of Defendants' summary judgment evidence.[67]  Plaintiff filed an amended response in opposition to Defendants' summary judgment motion two days later, on December 30, 2012.[68]  Defendants responded to Plaintiff's motion to strike on January 16, 2013, and filed a reply in support of their motion for summary judgment on January 22, 2013.[69]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson

---

[65]   See id.

[66]   See Doc. 36, Defs.' Mot. for Summ. J.; Doc. 45, Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.; Docs. 46-61, 65, Exs. to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J.

[67]   See Doc. 63, Pl.'s Mot. to Strike.

[68]   See Doc. 64-2, Pl.'s Am. Resp. in Opp'n to Defs.' Mot. for Summ. J.

[69]   See Doc. 70, Defs.' Resp. in Opp'n to Pl.'s Mot. to Strike; Doc. 72, Defs.' Reply in Support of Mot. for Summ. J.

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).   To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.   Anderson, 477 U.S. at
250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th
Cir. 2002).

        The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.   Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).   If the moving party can show an absence of record
evidence in support of one or more elements of the case for which
the nonmoving party bears the burden, the movant will be entitled
to summary judgment.   Celotex Corp., 477 U.S. at 322.   In response
to a showing of lack of evidence, the party opposing summary
judgment must go beyond the pleadings and proffer evidence that
establishes each of the challenged elements of the case,
demonstrating that genuine issues of material fact do exist that
must be resolved at trial.   Id. at 324.

        When considering the evidence, "[d]oubts are to be resolved in
favor of the nonmoving party, and any reasonable inferences are to
be drawn in favor of that party."   Evans v. City of Houston, 246

F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co.
v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court
should not "weigh evidence, assess credibility, or determine the
most reasonable inference to be drawn from the evidence."  Honore
v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some
metaphysical doubt as to the material facts."  Meinecke v. H & R
Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory
allegations, unsubstantiated assertions, improbable inferences,
unsupported speculation, or only a scintilla of evidence will not
carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson,
286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary
judgment if, after an adequate period of discovery, the nonmovant
fails "to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Celotex Corp., 477 U.S.
at 322.

### III.  Motion to Strike

Before turning to the merits of Defendants' summary judgment
motion, the court addresses Plaintiff's motion to strike certain
declaration testimony submitted by Defendants as summary judgment
evidence.  Specifically, Plaintiff objects to portions of Boyd's
deposition on the grounds that statements contained therein are:
(1) hearsay; (2) conclusory; (3) speculative; and (4)

14

unauthenticated.[70]  Plaintiff also objects to Defendants' statement
of facts on the grounds that certain statements are not properly
cited or are not supported by the record.   The court first
considers Plaintiff's objections to Boyd's declaration testimony.

As an initial matter, the court notes that the bulk of the
statements cited by Plaintiff as objectionable are not contained in
the declaration from Boyd submitted in support of Defendants'
summary judgment motion.[71]   As the statements challenged by
Plaintiff in paragraphs five, six, seven, eight, eleven, twelve,
thirteen, and fourteen are not included in the declaration before
the  court,  Plaintiff's  objections  to  these  statements  are
overruled.  Despite Plaintiff's failure to cite to the declaration
from Boyd submitted by Defendants in this case, the court considers
the  viability  of  Plaintiff's  objections  to  statements  that  are
reflected in the declaration before the court.

Plaintiff objects to Boyd's testimony that "Hanley and I hoped
the  economic  situation  would  improve  so  that  no  further  layoffs
were needed" on hearsay grounds.[72]   Under Federal Rule of Evidence

---

[70]     Although Plaintiff discusses authentication requirements pursuant to
Federal Rule of Evidence 901, she does not identify any statements or documents
to which she objects on authentication grounds.

[71]     It appears that the declaration referenced by Plaintiff in her motion
to strike was submitted in a separate case.   See Siler v. Hajoca Corp., et al.,
No. H-11-1192, Doc. 46-2, Ex. A to Defs.' Mot. for Summ. J., Decl. of Colin Boyd.
This declaration has not been offered as evidence in support of Defendants'
summary judgment motion in this case.

[72]     Doc. 36-4, Ex. A to Defs.' Mot. for Summ. J., Decl. of Colin Boyd ¶
5.

801(c), a hearsay statement[73] is one that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "Statement" is defined by the Federal Rules of Evidence as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Under the hearsay exception of 803(3), the following does not constitute inadmissible hearsay:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed. . . .

Fed. R. Evid. 803(3).

Plaintiff has not specified how the aforementioned statement constitutes hearsay. Nonetheless, assuming that the statement is hearsay, it falls squarely within the emotional-condition exception of Federal Rule of Evidence 803(3) as to Boyd. With regard to Hanley, the statement is hearsay because the only way Boyd would know what Hanley "hoped" would be if Hanley had told Boyd and because it is offered for its truth regarding Hanley's hopes. Boyd may not testify as to Hanley's then-existing emotional condition because Hanley is not the declarant of the challenged statement.

---

[73]    See id. ¶ 5.

16

Thus, the court overrules Plaintiff's objection to this statement as it applies to Boyd, but sustains the objection to the extent it attests to the emotional condition of Hanley.

Plaintiff also objects to Boyd's statements that Moore Supply's profits in 2009 were unsatisfactory, that his decision to terminate Siler and Stewart "had nothing to do with their ages,"[74] that an employee "got mad at my counseling and quit,"[75] and that another employee stopped showing up to work because "he apparently was angry that I laid off his uncle"[76] as being conclusory.  The court agrees that Boyd's statement that an employee quit because he was angry that Boyd fired his uncle is either hearsay, if offered for the truth of the matter asserted, or speculative.  Although Boyd may testify to the fact that he fired the employee's uncle and that the employee subsequently stopped attending work, Boyd may not make the cognitive leap, without personal knowledge, that the employee must have been angered by Boyd's action and, on that basis, decided to stop working.  The court therefore sustains Plaintiff's objection to this statement.

The court disagrees with Plaintiff, however, that the first

---

[74]     Id. ¶ 6.

[75]     Id. ¶ 8.  Boyd warned a driver that he needed to improve his performance or face termination, and the driver quit.  Id.

[76]     Id.  Shortly after Love's termination, Love's nephew, who was twenty-six years old, stopped showing up for work and was terminated in October 2009.  See id.; Doc. 36-4, Ex. F to Defs.' Mot. for Summ. J., Decl. of Lee Cormier ¶ 3; Doc. 56-2, Ex. 72 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Notes Dated Dec. 17, 2009.

three statements that are conclusory.  Defendants have offered both testimony and other evidence to support each of the challenged statements.   Plaintiff's objections to these statements are therefore overruled, and the court will consider them in resolving the pending summary judgment motion.

Turning to Plaintiff's argument that the court should strike statements contained in Defendants' statement of facts because Defendants failed to properly cite to the record, the court agrees that Defendants provided only cursory citations to the record in rendering their account of the facts.  However, in determining the facts of this case, the court does not rely on the statement of facts articulated by either party in their summary judgment briefing.  Rather, the summary judgment evidence before the court constitutes the source of the facts of this case.   The court therefore overrules Plaintiff's objections to Defendants' statement of facts.

Given the above, the court grants in part and denies in part Plaintiff's motion to strike Defendants' summary judgment evidence and statement of facts.

### IV.  Analysis

Defendants move for summary judgment on Plaintiff's claim of discrimination under the ADEA.  The court considers the merits of Defendants' motion.

## A. __Applicable Law__

The ADEA makes it "unlawful for an employer . . . to discharge
any individual . . . because of such individual's age."  29 U.S.C.
§ 623(a)(1).  To establish an ADEA claim, "[a] plaintiff must prove
by a preponderance of the evidence (which may be direct or
circumstantial), that age was the 'but-for' cause of the challenged
employer decision."  Gross v. Fin. Servs., Inc., 557 U.S. 167, 177-
78 (2009).

In the absence of direct evidence of age discrimination, as is
the case here, the Fifth Circuit analyzes ADEA claims under the
modified burden-shifting framework of McDonnell Douglas Corp. v.
Green, 411 U.S. 792 (1973).  Moss v. BMC Software, Inc., 610 F.3d
917, 922 (5th Cir. 2010)(quoting Berquist v. Wash. Mut. Bank, 500
F.3d 344, 349 (5th Cir. 2007)); see also Desert Palace, Inc. v.
Costa, 539 U.S. 90 (2003) (modifying McDonnell Douglas, 411 U.S.
792); but see Gross, 557 U.S. at 174, 175 n.2 (noting, in dicta,
that the U.S. Supreme Court had never decided whether the burden-
shifting framework applies to ADEA claims and declining to do so in
that case).

Under this approach, a plaintiff may trigger a presumption of
discrimination by establishing a prima facie case.  Jackson v. Cal-
W. Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010).  To establish
a prima facie case of discrimination under the ADEA, a plaintiff
must show that she: (1) was terminated; (2) was qualified for her

19

position; (3) belonged to the protected group of persons over the age of forty, and (4) was replaced by someone younger or outside the protected group, or was otherwise discharged because of her age. Id. (quoting Berquist v. Wash. Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007); see also 29 U.S.C. § 631 (applying the ADEA only to individuals at least forty years old). A prima facie case of ADEA discrimination where a reduction-in-force ("RIF") is involved requires a plaintiff to show that: (1) she belonged to the group of persons protected under the ADEA; (2) she suffered an adverse employment action; (3) she was qualified to assume another position at the time of the adverse employment action; and (4) there is direct or circumstantial evidence "from which a fact finder might reasonably conclude that the employer tended to discriminate in reaching the decision at issue." Chavarria v. Despachos Del Notre, Inc., 390 F. Supp. 2d 591, 597 (S.D. Tex. 2005) (quoting Woodhouse v. Magnolia Hosp., 92 F.3d 248, 252 (5th Cir. 1996)) (internal quotation marks omitted).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its adverse employment action. Moss, 610 F.3d at 922 (quoting Berquist, 500 F.3d at 349). If the defendant satisfies this burden, the plaintiff must "rebut the employer's purported explanation, to show that the reason given is merely pretextual." Id. (citing Jackson, 602 F.3d at 378-79). The

20

text of the ADEA does not authorize a mixed-motives claim.  <u>Gross</u>,
557 U.S. at 175.

**B.  <u>Discussion of Prima Facie Case</u>**

Defendants do not challenge Plaintiff's ability to satisfy the
first three elements of a prima facie case.  Rather, Defendants
contend that Plaintiff has failed to satisfy the final element of
a prima facie case, namely, that she was replaced by someone
younger or outside of her protected category or was otherwise
terminated because of her age.  Specifically, Defendants argue that
Plaintiff lacks a comparator, given that she was the only employee
who held a clerical position and that the duties and
responsibilities of Plaintiff's position were assumed by the
remaining employees after Plaintiff's termination.[77]

The court notes, however, that the parties appear to dispute
the proper standard for proving a prima facie case in this lawsuit.
Plaintiff contends that the Fifth Circuit's RIF framework for a
prima facie case applies here, whereas Defendants rely on the
slightly variant prima facie elements of a standard ADEA
discrimination claim involving termination.  Defendants contend
that Plaintiff was terminated as a result of the economic
recession's impact on Moore Supply's profit revenues.  Defendants

---

[77]    Plaintiff cites the 2009-2010 Profit Center Manager Profile to
support her position that she was replaced by a younger employee.  The court
cannot find any support for this assertion in the document.  <u>See</u> Doc. 65-2, Ex.
84 to Pl.'s , Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's 2009-2010
Profit Center Manager Profile.

also state that layoffs occurred throughout the South Texas region during the economic recession. Further, although Defendants do not specifically articulate their reason for terminating Plaintiff in terms of a RIF, the court notes that they nonetheless rely on RIF case law to support their position.[78]

Reading the evidence in the light most favorable to Plaintiff, the court finds that the facts characterized by the parties implicate a RIF. The court therefore analyzes this case under the Fifth Circuit's RIF framework. Consequently, to satisfy the final element of an ADEA claim involving a RIF, Plaintiff need only provide evidence "from which a fact finder might reasonably conclude that the employer tended to discriminate in reaching the decision at issue." Chavarria, 390 F. Supp. 2d at 597 (citation and internal quotation marks omitted).

In support of the final element of a prima facie case of ADEA discrimination in the context of a RIF, Plaintiff has produced evidence showing that, during the economic downturn, Boyd terminated Plaintiff and two other employees, all three of whom were within the protected category of individuals over the age of forty.[79] The court finds that, in a RIF case, this evidence is

---

[78] See, e.g., Doc. 72, Defs.' Reply in Support of Mot. for Summ. J. pp. 6-7.

[79] The employment of a fourth employee, who was not within the protected age category, also ended during the economic downturn after he stopped showing up for work and never returned. See Doc. 36-4, Ex. E to Defs.' Mot. for Summ. J., Decl. of Colin Boyd ¶ 8. The parties do not raise any issues concerning this employment decision in the context of Plaintiff's discrimination claim.

sufficient to satisfy Plaintiff's burden on the final element of her prima facie case. Accordingly, Plaintiff has established a prima facie case of discrimination under the ADEA.

## C.  **Discussion of Legitimate, Nondiscriminatory Reason**

Having determined that Plaintiff satisfied the elements of her prima facie case, the court turns to Defendants' articulated legitimate, nondiscriminatory reason for terminating Plaintiff. See Moss, 610 F.3d at 922 (quoting Berquist, 500 F.3d at 349). In this case, Defendants assert that the decision to terminate Plaintiff was prompted by the economic recession. Specifically, Boyd claims that he decided to terminate Plaintiff because her position was the only clerical position and her duties could be absorbed by the remaining employees. In support of this articulated reason, Defendants rely primarily on deposition testimony from Hanley and Boyd, as well as corresponding evidence attached thereto. Defendants have thus satisfied their burden of showing a legitimate, nondiscriminatory reason for their conduct. The court therefore proceeds to the next stage of the McDonnell Douglas burden-shifting scheme.

## D.  **Discussion of Pretext**

To overcome Defendants' motion for summary judgment on her ADEA claim, Plaintiff must produce some evidence demonstrating that Defendant's nondiscriminatory reason for terminating her is mere pretext. See id. (quoting Berquist, 500 F.3d at 349). Plaintiff

makes a number of arguments in support of a showing of pretext.
Defendants contend that Plaintiff has failed to meet her burden to
produce competent summary judgment evidence raising a question of
material fact as to pretext.   The court discusses Plaintiff's
arguments in support of a finding of pretext or discriminatory
animus.

### 1. Business Decisions

In evaluating a plaintiff's evidence in support of pretext, it
is not within the court's purview to second-guess the employer's
business decisions.  See Moss, 610 F.3d at 926.  The Fifth Circuit
has consistently ruled that:

> The ADEA was not intended to be a vehicle for judicial
> second-guessing of employment decisions nor was it
> intended to transform the courts into personnel managers.
> The ADEA cannot protect older employees from erroneous or
> even arbitrary personnel decisions, but only from
> decisions which are unlawfully motivated.

Moss, 610 F.3d at 926 (quoting Bienkowski v. Am. Airlines, Inc.,
851 F.2d 1503, 1507-08 (1988)).

Here, Plaintiff points to Boyd's "dream team" system and
related evaluations and to Boyd's creating the positions of
operation manager and outside sales associate in August 2007 and
March 2008, respectively, to support her evidentiary burden at this
stage of the McDonnell Douglas framework.  Plaintiff also complains
that Boyd allowed two of the employees to take credit for sales and

24

orders that were the result of Boyd's work.[80]   Further, Plaintiff takes issue with Defendants' failure to provide job descriptions for its employees and to have superiors review Boyd's layoff decisions.[81] The court finds that these actions constitute business judgments and, therefore, will not second-guess these decisions.

Plaintiff also challenges Defendants' articulated reason for terminating Love and Stewart, namely, performance deficiencies.   In support of her position, Plaintiff cites: (1) the temporal proximity of performance reviews, expressed job expectations, and disciplinary reports with Love and Stewart's terminations; (2) the existence of written performance evaluations for only Love and Stewart; and (3) Love and Stewart's performance compared to the other sales employees.

Not only are the decisions to terminate Love and Stewart for poor performance business decisions best left to the employer, but suggestions of pretext as to Love and Stewart's terminations are irrelevant.    The issue   in  this  case  is  whether  Defendant's

---

[80]     Plaintiff points out that Boyd gave one of the employees credit for sales made by Boyd on accounts with "big-money sales," the likes of which Stewart did not have.  See Doc. 64-2, Pl.'s Am. Resp. in Opp'n to Defs.' Mot. for Summ. J. Stewart is not a party to this lawsuit and Plaintiff fails to articulate how this claim amounts to pretext of age discrimination against Plaintiff.

[81]     The court notes that Plaintiff points out that she was not given the option to work part-time as opposed to losing her job entirely.   The court declines to second-guess Defendants' business decision to terminate Plaintiff instead of reducing her hours.  Plaintiff also rhetorically asks why Plaintiff was not offered part-time employment instead of being terminated and, "Who was not affordable?" between Plaintiff and Taft. Doc. 64-2, Pl.'s Am. Resp. in Opp'n to Defs.' Mot. for Summ. J. p. 45.  The court declines to delve into the business decisions that may be responsive to Plaintiff's speculative and unelaborated inquiries.

proffered reason for terminating Plaintiff was pretext for age discrimination in her case.  Plaintiff cannot parlay her suspicions about Love and Stewart's terminations into a fact question on whether age was the reason that Defendants decided to act in her case.   The court therefore finds that Plaintiff's arguments regarding the legitimacy of Love and Stewart's terminations are insufficient to raise a question of material fact as to the legitimacy of Defendants' decision to terminate Plaintiff.

### 2.  Ageist Statements

If workplace comments indicate invidious animus and the speaker is primarily responsible for the adverse employment action, then the comments provide evidence of pretext.  Rios v. Rosotti, 252 F.3d 375, 379 (5th Cir. 2001)(citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)).

In support of a showing of pretext, Plaintiff also argues that Boyd made several ageist statements.  Specifically, Plaintiff directs the court's attention to statements contained in Boyd's C+ employee rating of Love and in Love's August 2009 performance evaluation.  Boyd stated, in the former, that Love was "extremely SLOW" at completing his work and had limited knowledge with the computer system,[82] and, in the latter, that Love needed to improve his pace of work.  In addition, Plaintiff calls into question

---

[82]    Doc. 55-6, Ex. 68 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Employee Ratings.

Boyd's intent when he mentioned, upon terminating Love, the availability of another computer-related position with the company and argues that it showed age animus in light of Boyd's professed view of Love's computer skills.

These statements, on their face, are not age related and simply do not give rise to the inference of an age-based bias on the part of Boyd.[83]   Accordingly, the court finds these statements do not amount to evidence of pretext or age discrimination.

### 3.  Boyd's Treatment of Plaintiff

Turning to Plaintiff's contention that Boyd treated Plaintiff and other older employees differently than younger employees, a plaintiff's subjective belief that she is the victim of discrimination is insufficient to create an inference of discriminatory intent. See Vasquez v. Nueces Cty., Tex., slip op., No. C-11-45, 2013 WL 1187956, at *5 (S.D. Tex. Mar. 20, 2013) (citing Waggoner v. City of Garland, 987 F.2d 1160, 1166 (5th Cir. 1993)).

The entirety of Plaintiff's argument under the heading entitled "Boyd Displayed an Obvious Difference in His Relationships with the Younger Employees" reads as follows:

---

[83]    The court further notes that these statements were not directed at Plaintiff.  In a further attempt to identify ageist comments, Plaintiff points to a statement contained in a 2005 email between Hanley and Boyd's predecessor in which Hanley stated that Plaintiff and another employee were having trouble mastering the computer system.  See Doc. 55-1, Ex. 63 to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Email Dated May 25, 2005.  Plaintiff fails to articulate the relevance of this non-age-related statement preceding Plaintiff's termination by approximately five years to Boyd's 2010 decision to terminate Plaintiff.

> Here, as in <u>Reeves</u>, the decision maker treated the older
> employees in a manner that was obviously different from,
> and less favorable than, the way he treated the younger
> employees.  <u>Reeves</u> 530 U.S. 133, 151-52 (2000).[84]

To the extent that this argument is intended to reference
Plaintiff's testimony that Boyd ignored her and spoke about
business and socialized with a select group of five or six younger
employees, Plaintiff has not offered any competent summary judgment
evidence that her age motivated Boyd's conduct.  The court
therefore finds that Plaintiff has failed to raise a question of
material fact, based on Boyd's treatment of his employees, on the
issue of pretext or discriminatory animus.

### 4.  Statistical Disparities

"[G]eneralized statistical evidence will rarely rebut a
particularized nondiscriminatory rationale, [but] statistical
evidence may be probative of pretext in limited circumstances."
<u>E.E.O.C. v. Tex. Instruments Inc.</u>, 100 F.3d 1173, 1185 (5th Cir.
1996).  The probative value of statistical evidence is ultimately
dependent on "all the surrounding facts, circumstances, and other
evidence of discrimination."  <u>Id.</u>

Plaintiff contends that statistical disparities indicate that
ADEA-protected employees were terminated at a significantly higher
rate than employees who were under the age of forty.  However,
Plaintiff has failed to produce competent summary judgment evidence

---

[84]    Doc. 64-2, Pl.'s Am. Resp. in Opp'n to Defs.' Mot. for Summ. J. p.
37.

in support of this argument.  Although Plaintiff directs the court
to a document purporting to be a report summarizing the layoffs
that took place at Moore Supply locations in the North Texas and
South Texas regions, Plaintiff has not pointed to any affidavit or
testimony authenticating this document.[85]  Moreover, the document
contains material errors on its face.[86]

The court therefore concludes that the contents of the
document are unreliable and, thus, insufficient to rebut
Defendants' articulated, nondiscriminatory reason for terminating
Plaintiff.  Even absent the obvious unreliability of the document,
the information therein suggests only that, by the raw numbers,
more employees over the age of forty were terminated than employees
under the age of forty from 2008-2010.  The information lacks
context, such as details on the age composition of Defendants'
employees overall.  For these reasons, Plaintiff's statistical
summary is due very little probative value as evidence of
discrimination and does not raise a question of material fact as to
pretext.

### 5.  Conflicting Reasons for Termination

In <u>Reeves</u>, the Court noted that the finder of fact "can

---

[85]     <u>See</u> Doc. 58-3, Ex. 108 to Pl.'s Resp. in Opp'n to Defs.' Mot. for
Summ. J., Summ. Layoff Rep. by Age.

[86]     For instance, the document indicates that an employee in the South
Texas region who was born on June 18, 1971, and terminated from employment on
April 2, 2010, was fifty-six years old at the time of his termination.  <u>See id.</u>
p. 3.  Indeed, the birth date, termination date, and age listed for Plaintiff do
not reconcile.  <u>See id.</u>

reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 147.   A plaintiff must produce sufficient evidence to allow a finding that the employer's stated reason is false.   See id. at 148.   Yet, a showing of falsity is not always enough "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."   Id.

By extension, evidence of an employer's inconsistent or conflicting reasons for a business decision may allow for an inference of pretext.   Nasti v. CIBA Specialty Chems. Corp., 492 F.3d 589, 594 (5th Cir. 2007)(citing Read v. BT Alex Brown Inc., 72 F. App'x 112, 120 (5th Cir. 2003)(unpublished)).   In Nasti, which was a gender discrimination case, the plaintiff claimed that her employer stated that she was terminated for a false call report and for performance-related reasons.   Id.   Although recognizing inconsistent reasons may be evidence of pretext, the court found that the two explanations given by the employer were not inconsistent.   Id.; see also Read, 72 F. App'x at 120-21 (reaching the same result in a gender and age discrimination case, where the employer told the plaintiff that she was being terminated for

failing to reach a particular goal but took the position in litigation that termination was based on her overall performance).

Both <u>Nasti</u> and <u>Read</u> were decided prior to <u>Gross</u>. In <u>Gross</u>, the Supreme Court made it clear that ADEA cases require "but for" evidence of pretext. <u>Gross</u>, 557 U.S. at 174, 176 ("Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.").[87]  The Court emphasized that the plaintiff must show that "age was the reason that the employer decided to act." <u>Id.</u> at 176 (internal quotation marks omitted).

Plaintiff contends that Boyd offered two conflicting reasons for terminating Plaintiff: (1) Defendants' job elimination due to the economic recession; and (2) underperformance. The former is the reason Defendants proffered in litigation. In support of the latter, Plaintiff cites Boyd's 2009-2010 Profit Center Manager Profile, wherein Boyd indicated that he terminated Plaintiff for failing to improve her performance. Plaintiff argues that the two reasons conflict. In response, Defendants contend that Boyd has consistently testified that his decision was driven by the economic recession and that he terminated Plaintiff because her clerical duties could be assumed by the remaining employees. According to Defendants, although Boyd did not consider Plaintiff to be a hard-

---

[87]     The Court also found that the ADEA does not authorize mixed-motives age discrimination claims. <u>Gross</u>, 557 U.S. at 175.

worker,[88] he did not terminate her for that reason.

In the court's view, these reasons are hardly inconsistent. It is not only common, but logical, for employers to choose the marginal performers for termination in RIFs.  Regardless, the suggestion that providing two separate reasons, neither related to age, could raise the inference that Defendants are dissembling to cover up age discrimination is too far a stretch under the ADEA. Even with the assistance of case law allowing an inference of falsity when two inconsistent reasons are given, Plaintiff has presented nothing more than a weak possibility of falsity.  In this case, that inference is not enough.  Plaintiff needs evidence that age was the "but for" reason for her termination.  The record is devoid of any such evidence.  Accordingly, the court finds that Plaintiff has failed to produce sufficient evidence to raise a fact issue on falsity, much less on the ultimate issue whether age was the actual reason.

## V.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**.  Plaintiff's Motion to Strike is **GRANTED IN PART, DENIED IN PART**.

The Clerk shall send copies of this Memorandum, Recommendation and Order to the respective parties who have fourteen days from the

---

[88]    See Doc. 50, Ex. 9 to Pl.'s Am. Resp. in Opp'n to Defs.' Mot. for Summ. J., Colin Boyd's Dep. p. 64.

receipt thereof to file written objections to the recommendation pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 23rd day of August, 2013.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE